Good morning, Your Honor. I'm Charles Lemangui. I'm representing the appellant Andrea Neff. Ms. Neff is seeking to recover uninsured and underinsured motorist coverage under a commercial umbrella liability policy. Although it is true that the standard form provisions of that liability policy only cover the liability of the insured to third parties, that policy is changed by a following form endorsement that is broadly worded and states that it will cover any liability arising out of the use of any automobile and it covers bodily injury for any of the hazards that are covered under the primary policy that's listed in the schedule of underlying insurance, which in this case is a courageous insurance policy, which indeed provides a million dollars not just for your typical liability insurance, but also for uninsured and underinsured motorist coverage. Now, we cited Arizona case law, including the Voland case, which states that when you're talking about uninsured, underinsured motorist coverage, it's really a hybrid between first-party and third-party liability because the insured, although they're making a first-party claim for their own injuries, they have to prove the liability of a third party. So unlike no fault or workers' comp, it is a fault-based system, and in that sense it's been called a variant of liability insurance by Calchon Insurance, and again Voland calls it a hybrid. But in Arizona, which is a law that applies here because the accident occurred in Arizona and this is a diversity case, there's actually statutory and case law that addresses the issue, at least indirectly, but addresses the issue, is liability insurance inclusive of uninsured, underinsured motorist coverage? That's the key issue because the district court found respectfully but erroneously that liability insurance and underinsured motorist coverage was basically mutually exclusive, citing inapplicable out-of-state Connecticut law. But in Arizona, we have a statute, ARS 20252, which we cite in our brief, that says automobile liability insurance covers the liability irrespective of the liability of the insured. In other words, we're not just talking about coverage for someone who's insured and injures someone else and who risks being sued. So it's broader language under the statute, and Arizona oftentimes follows California law on these issues. There's recent California authority for the State Farm v. Progressive case we cite. California also having a statute talking about liability insurance without specifically mentioning uninsured, underinsured motorist coverage. The Court held in the Progressive case that that would include uninsured motorist coverage. That was 2007. But it cites nationwide an Arizona case which also said we reject the conclusion that liability insurance does not cover uninsured, underinsured motorist coverage. Interestingly, in further research, my opposition cited the nationwide case to the Ninth Circuit in the Bills case in their brief, and they quoted that exact language. And I've got the Westlaw citation to their brief where they quoted nationwide an Arizona appellate case which says we reject the conclusion that liability insurance does not include uninsured, underinsured motorist coverage. The opposition does not cite Volan. It does not cite Bills. It does not talk about ARS 20252. It does not talk about nationwide. It jumps, as the district court did at their invitation, to the Mazzaferro case, which was a Second Circuit case applying Connecticut law, which does not have a statute that limits liability. Actually, it doesn't have a statute that's been interpreted to include uninsured, underinsured motorist coverage. It doesn't even have the public policy that has been repeatedly expressed by almost every Arizona court and this Court applying Arizona law that they want to protect drivers from the very high risk. You know, Your Honors, the biggest risk we have when we go out on the roadways in California and Arizona is being struck by uninsured motorists, because these are people oftentimes with bad driving records that can't afford insurance. Arizona and California are on the top five States with uninsured, underinsured motorists. Connecticut is in the very lower end of the scale in New England. They don't have the public policy that the Arizona Supreme Court and this Court, the Ninth Circuit in the Bill's case, has repeatedly said that uninsured, underinsured motorist coverage is remedial in nature. It should be liberally construed. In every case the opposition has cited and the district court quoted from their briefs found coverage for the insured for uninsured, underinsured motorist coverage. I'd like to go through the policy a little more, in a little more detail. Starting at ER 66, where it said this is the beginning of the insurance agreement that will pay anything an insurer is legally obligated to pay. Now, you say that provision is all there, and tell me where it's all there. Yes, Your Honor. Thank you for pointing that out. If we did not have a following form endorsement in this policy, which you'll find, Your Honor, at ER 57, we would have no case. Because under the standard form policy, there is no coverage for uninsured, underinsured motorists. It makes it clear it only covers liability to the insured. However, this following form, which the opposition ---- Page 57. Page 57, Your Honor, ER, Excerpt of the Record. Yeah. Where on 67 is it? It's 057, Your Honor. 57, I'm sorry. 57. Yes, Your Honor. 57. Why isn't it attached to the policy? It just ---- It is. It's part of the policy, the way it's set up here. It's got the ---- it was Exhibit 2 to one of our moving papers. But it includes the following form up front. And it says right on there, this endorsement changes the policy. Please read it carefully. All right. So will you read it through slowly and see what it means? Yes, Your Honor. It is agreed. Can you read it? Just read it aloud. Yes, I'll do that, Your Honor. It is agreed that this policy shall not apply to any liability for bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of any automobile unless such liability is covered by valid and collectible underlying insurance as described in the schedule of underlying insurance to the full limits of such underlying insurance and then only for such hazards for which coverage is afforded under said underlying insurance. And your argument is that incorporates the basic policy which has an underinsured motorist. Absolutely. And the opposition agrees. On page 28 of their brief, they agree that when you have one of these following forms, you don't go to the rest of the umbrella policy. You go to the primary policy. And it incorporates the terms of the primary policy into the umbrella policy. That seems fairly logical. What's their answer to that? Their answer to that, they ignore it, as they did the district court. They ignore the underlying policy. And they say the use of the word liability means we're going to go ahead and take the liability portion of the underlying policy, but we don't understand that to include uninsured, underinsured motorists. And we're saying in Connecticut that's a good argument when you won in the Mazzofaro case, not in Arizona, because in Arizona we have statutory and case law that follows California that says this language is broad enough. And all they had to do, Your Honor, looking at this following form, is what they've done in other cases we cite like Camilla, just right at the end of that following form say, except we will not cover uninsured, underinsured motorists. That's all they had to do, and we would not be in court. But they left it at the very least ambiguous. But under the law that should apply in this case, it's not ambiguous because liability has to be broad enough under Arizona law to encompass this specific hazard, which is the greatest risk faced by motorists in Arizona and California. And, indeed, Hensley, who bought this policy, has a whole fleet of automobiles on the road, certainly with the million dollars of uninsured, underinsured motorists' primary coverage. They would want that $20 million RLI umbrella to protect the same hazards, including the biggest hazard of uninsured, underinsured motorists. I'd like to save a minute for rebuttal, if I may. Thank you. Thank you. Good morning, Your Honor. Stephen Plitt representing RLI Insurance Company. Your Honor, I would like to address Judge Noonan's comments because there are two Arizona Supreme Court cases. Now, let's look at the policy. Yes, Your Honor. Let's start with the language of the policy. Yes. The language of the policy, Your Honor, talks about a – first of all, it's titled automobile liability following form. Then that following form endorsement references the schedule of underlying coverage, not the underlying policy, but the schedule of underlying coverages. And there it doesn't say courageous. It says automobile liability. And then it talks about all bodily injury up to that point. So it's not necessarily incorporating the entirety, if you will, of the underlying policy, because there are other endorsements. There is a follow form liquor liability endorsement that's talking about the liquor liability that it is now sitting on top of. And then there is another particular, and I forget the exact one, Your Honor, but there are three follow form endorsements. And what they do is they simply say they focus in, if you will, cherry-picking to that coverage, which is the automobile liability coverage, and say that's what we follow form to. So by incorporating the schedule into the endorsement, and the schedule simply says automobile liability, it's not incorporating the entirety of the policy. It's incorporating into that endorsement the automobile liability coverages. Now, those coverages are not uninsured and underinsured motorist coverage. And we know that because the most recent pronouncement from the Arizona Supreme Court, which is the Taylor decision, makes the distinction. Now, they talk to you about, and I'd like to get to the two cases because they're very important. Umbrella coverage is very different than primary policies. Primary policies are imbibed with the financial responsibility public policy. And the public policy oftentimes displaces policy language. But not umbrella policies generally, and not in Arizona specifically. The Gilmore case is a case where the pronouncement of the court talking about this 20-252. But Justice Feldman, who ironically also authored Taylor, says we hold, therefore, that with the possible exception of umbrella, true excess policies, which we do not is an automobile liability or motor vehicle liability policy within the meaning of the uninsured motorist statute. The legislature, responding to Gilmore, then did amend the statute to add ARS section 20-259.01 subpart L, which specifically removes from the statute, which that definition is tethered to, true umbrella policies. They basically say you are not required to offer UM and UIM coverages in umbrella policies. The practical effect of that is to leave it purely, purely to the language of the policy. But all of the cases that counsel has cited to you, every single one of them is a primary policy. Those primary policies are subject to the public policies of their states to make sure that that primary layer is there. That is not the case that we have with umbrella policies. And as I've just read to you, even from the Gilmore case that they cite, which is an Arizona Supreme Court precedent, true umbrella policies are treated differently. They are not imbibed with the obligations of public policy. Ginsburg. Can we go back to the language of the following form? It says, in terms of what we have to interpret and what's covered, it says the policy doesn't apply to liability for autos. That's the first part, in effect, right? So if it ended right there, then we would have an easy case. But then it says unless the liability is covered by valid and collectible underlying insurance. And then if I read it right, as defined in this schedule. If it's available in the schedule and the underlying policy, and it says automobile liability, not the policy, but automobile liability. It says, but is covered by valid and collectible underlying insurance as described in the schedule of underlying insurance. So you then go, so first it says, okay, well, no coverage, but there might be coverage if or unless, you know, if the liability, such liability, meaning liability arising out of an auto, correct? If it's in the underlying schedule. So then does all this come down to an interpretation of what's in the underlying schedule? It comes into the term what is automobile liability. And that's what I want to turn to now, because if you read Arizona's statute that they rely upon, 2252, they misapply it. If you read the statute, first of all, it's defining casualty insurance, not liability insurance. And it's for purposes of the statute, which, as I've explained, subpart L of 2259.01, subpart L, has removed umbrella policies. There are two concepts in this statute that they conflate, which is improper. It starts out, casualty insurance defined is liability insurance, which is insurance against legal liability for the death, injury or disability of any human being or for damage to property. That's a standard definition of liability. The second part is not a reiteration. It says, and provision of medical, hospital, surgical, disability benefits to injured persons and funeral and death benefits to dependent beneficiaries or personal representatives, and this is the language they quoted to you, irrespective of legal liability of the insured. Under the last antecedent rule, which Arizona adopts, you go, you take that qualifying phrase to the last preceding statement, which is this second type of category of coverage that is, in essence, no-fault coverage, because then, if you read the last sentence, it makes that clear. It says, for these other coverages, which, irrespective of legal liability, when issued as an incidental coverage with or supplemental to liability insurance. See, they're trying to say, Your Honor, that uninsured motorists, because it is irrespective of legal liability, somehow makes that liability coverage based on this statute. This statute first doesn't apply to umbrella policies, and I've read you not only the case law from the Supreme Court, but also the actual statute, 2259.01L. And the last antecedent rule tells us that that language goes to, like, medical payments coverage. You can have no-fault medical payments, no-fault disability coverage. It's the last part that makes the distinction. It says, when these other coverages are offered incidental to or supplemental with, then it becomes casualty insurance. That's what the statute's talking about. Ironically, California has made that absolutely clear in its statute, because if you look at the statute that not only the case that they're talking about, the State Farm v. Progressive Marathon case, and you look at the statute section 108, if you look at 108b-2, it's talking about what we just talked about, when you have coverage that's issued supplemental to the insured for disability. Ginsburg. Can I just ask another question? Is another way to look at this is that the way this following form is written, the underlying insurance has to flow up, in effect, as far as what there is liability for? No. Only liability coverage flows up. That does not apply to separate endorsement, which is uninsured and underinsured motives. It flows up as to what liability is covered under the underlying policy. No. It's because I have to tell you, this is the reason this is confusing, is because the cases talk about, of course, liability insurance versus liability, and then in talking about it, people mix and match the terms. Well, and the reason they mix and match the terms, Your Honor, this confusion comes from the level of the coverage we're talking about. And here's why. When you're at that primary layer, almost every State under their financial responsibility acts, whether they be the liability side or the uninsured motives, they tinker with the policy because the statute trumps the policy, no matter what the language says. Here, it doesn't trump it. So we're not even worried about the definition. What is automobile liability? And that's what the Mezaferro case dealt with. They said automobile liability, when it's not tinkered with by the public policy of a primary policy, means what it means. It means liability against somebody suing you, which is what Judge Noonan was talking about when you look at the insuring clause of the umbrella policy, the umbrella liability policy. The concept of liability, Couch recognizes, is a separate and distinct thing. And in fact, your statute that they're reliant upon. Ginsburg. I understand that, but the question here is the way this is written, is it is written as to liability covered. So in order for that to make sense in terms of your argument, the actual liability covered by the underlying policy has to be the insurance liability. And you're saying that that is separate and distinct from any add-on for U.M. or U.I.M. That is correct. Liability insurance is very specific. And virtually when you look at all the cases we've cited, it is overwhelming where it's not a primary policy, where they tinker with the idea. Every single one of those cases in an umbrella context, automobile liability means protection for you against a third-party action. And so if I could just conclude. I see my time is up, Your Honor. I just want to get back to this statute because I think it also makes this even more clear. If you look at Section 108, like I said, they're trying to argue that these statutes give us the definition of what a liability is, and they don't, because, as I've explained, the umbrella policy is outside of these statutes by the statute itself. But aside from that, there's a separate subpart in your statute that deals with uninsured, underinsured motorists that tells us it has to be different than the language I just quoted you from 252, and that's subpart C. There is this language exists nowhere in the Arizona statutes, nor do we have a section 660 in the Arizona statutes which defines automobile liability to include uninsured and underinsured. Your statute 660, your code, it does. Kagan. You're talking, you are meaning California. California. Here it says, subpart C, insurance covering injury sustained by an insured resulting from a tort committed by a third party against which such third party is not himself covered by liability insurance. That's an uninsured motorist concept, and yet it is put in a separate and distinct subpart from the language I was just talking to you that does parallel Arizona, which talks about this disability type of coverage, the medical payments type of coverage. So your legislature, in formulating its own statute, saw that as a different type of coverage than uninsured and underinsured motorist coverage because they have a different language for UM and UIM coverage situations. That tells us it is different. It is consistent with the Arizona Supreme Court precedent saying liability is different than uninsured and underinsured motorist. Thank you. So any questions of the Court? No. Thank you, Your Honors. A couple of brief points in rebuttal. If I may, Your Honor, this statute they're trying to distance themselves from with vehicle insurance, and we cite that in our brief, and it refers to the code section for vehicle insurance. So in the nationwide case, which they still failed to address, was cited by the California progressive case. In a nationwide, the Arizona appellate court came right out and said you said they didn't respond on the meaning of the policy. Let's, you know, everybody's given these cases. We want to look at the policy. Sure, Your Honor. In this policy, the endorsement does refer over to the other one, the underlying one. And you've got to show that the underlying one in some way is an evoked. Sure. And how do you do that? Well, I do that because you go to the record, page 35, and under coverages, the underlying policy, the courageous policy, they have an automobile following form endorsement, okay? It lists a million dollars for your traditional liability and then a million dollars for uninsured and a million dollars for underinsured. Now, in the Mazzaferro case, the insured had a million dollars liability and 40,000 UIM. And the court's going to say we're not going to give you a million dollars coverage and then on top of that your umbrella. But in this case, applying the following form analysis, if you adopt the language from the courageous policy, it's incumbent upon the insurance company who wrote this following form to just add, like you'll see in the Camela case, which we cite on page 24 of our brief, at the very end, this hazards we're talking about from the underlying insurance does not include uninsured, underinsured motorists. That's all they had to add. RLA is selling insurance in 50 states. It's broadly interpreted in Arizona. And the public policy is protect drivers against this risk. That's all they had to do to clarify. And I'll tell you, if these judges, who are obviously very well experienced in insurance lawyers, are having trouble explaining it, how does the average insured, and that's the standard, the reasonable insured, read this and say, gee, I don't have coverage for my whole fleet of cars from this type of risk? It's not a fair interpretation. Thank you. Thank you. Thank you both for your argument. The case just argued is submitted and we're adjourned. Thank you.
judges: Noonan, McKeown, Archer